## Application of HEANY.

(Court of Appeals of District of Columbia. Submitted January 14, 1924. Decided April 7, 1924.)

### No. 1587.

1. **Patents ⊂⊃17—Claims of divisional application for automatic control of electric system for automobiles disallowed.**

   Claims of a divisional application relating to an automatic control of a patented starting, lighting, and ignition system for an automobile *held* properly disallowed.

2. **Patents ⊂⊃17—Improvement requiring only mechanical skill held no invention.**

   Where at time original application for patent for starting, lighting, and ignition system for automobiles was filed, it was obvious that switching devices might be so automatically controlled from motor or generator shafts that switching of battery circuit from motor to generator circuit could be accomplished automatically, and only mechanical skill was required to provide the means to effectuate automatic control, *held*, that there was no invention of a means for automatically shifting the switches.

Appeal from the Commissioner of Patents.

In the matter of the application of John Allen Heany. From a decision refusing to allow certain claims of a divisional application, applicant appeals. Affirmed.

E. B. Whitcomb and Chester H. Braselton, both of New York City, for appellant.

Theodore A. Hostetler, of Washington, D. C., for Commissioner of Patents.

Before ROBB and VAN ORSDEL, Associate Justices, and SMITH, Judge of the United States Court of Customs Appeals.

SMITH, Acting Associate Justice. This is an ex parte appeal from the decision of the Commissioner of Patents refusing to allow any of the 39 claims of a divisional application filed by John Allen Heany on the 15th of November, 1918, more than eight years after

the filing of the original application, which resulted in the issuance of a patent on December 17, 1918.

[1] The subject-matter of that patent is a starting, lighting, and ignition system of the two-unit type for automobiles. The features of the system are a generator, a motor, a storage battery, electrical circuits therefor, gearing connecting the engine and the generator and the engine and the motor, means for disconnecting the motor from the engine when started, and two switches manually operated for controlling the electrical circuits. The primary main line battery switch is the first to be called into play, and enables the operator to supply battery current to the ignition and at the same time to either the motor or the generator as may be determined by the position of the secondary switch. The normal position of the secondary switch is neutral, and in order to start the engine it must be moved by the operator, so as to carry the battery current to the motor. When the engine is started, it is thrown so as to break the circuit to the motor and connect the generator with the storage battery. When the engine stops, it is returned to its neutral position, so as to cut off the battery from both motor and generator.

The claims of the divisional application relied upon by the appellant are claims 1 to and including 12, claim 15, and claims 18 to and including 26. The invention thereby claimed relates to the automatic control of electrical energy used with the starting mechanism of internal combustion engines. The purpose of the alleged invention is to provide a means for the automatic control of the battery circuit in the starting system of such engines, a means for the automatic control of the connection between the source of energy and the generator and motor in a two-unit starting system, and a means whereby the speed of the engine controls the electrical circuits of the starting system.

The Primary Examiner rejected all the claims upon which the appellant now relies, on the ground that the original application disclosed and defined no specific structure which would make the circuit changes contemplated by the claims, and on the further ground that they were not patentable over the claimed subject-matter of the Heany patent.

The Examiners in Chief held that the original disclosure might be supplemented, where it would be obvious to a skilled mechanic that some well-known device could be used without invention to produce the desired result, and pointed out that such a mechanic, on reading the reference, in the original application, to automatic control of the switch, would have his mind at once directed to the possibility of applying a centrifugal speed governor to the generator shaft and to its use for throwing the switch automatically when the generator had reached the proper speed to change the battery, especially as such a governor was a feature of a patent issued to Coleman in 1903, which feature was designed to accomplish a similar purpose.

That holding brought the Examiners in Chief to the consideration of whether automatic control of the switch was of an inventive character, and therefore not obvious. They held that the broad conception of automatically controlling the switch was obvious, and that prior to

Heany's original application such control had been suggested in 1903 by Coleman's patent.

The decision of the Examiner, rejecting the claims here in issue on the ground that there was no disclosure of an automatic switch, was accordingly reversed, and his ruling that such claims were not patentable over Heany's patent, issued December 17, 1918, on the application filed by him in August, 1910, was affirmed.

On Heany's appeal from that decision the Commissioner held, first, that the disclosure of the divisional case was identical with that of Heany's patent, with the exception that the divisional application added a centrifugal speed control device for operating the switch, designed to disconnect the motor and connect the generator after the engine had been started by the motor; second, that the applicant, having the art before him, invented nothing by adding the device of Coleman to the structure of his patent, and that, if Heany was entitled to make the claims, they added nothing to the patent issued on his original application.

The specification of the original application contains the following language:

"And it is also apparent that the switch devices might be automatically controlled from the motor and generator shafts, so that the switching of the battery circuit from the motor to the generator circuit could be accomplished automatically. * * * Obviously the details of the connections intermediate the dynamo, the motor, and the engine shaft, as well as those of the controlling switches or devices, may be varied to suit the exigencies of any particular case, it being most desirable to provide connections which will give a proper ratio for starting the engine from the motor and suitable ratio between the engine and the dynamo shaft with manually operated or automatically operated switching devices for giving the proper circuit connections between said devices and the source of power."

Whether that language warrants the issuance of a patent to Heany on the divisional application is the question presented by this appeal. We think it does not.

[2] If at the time the original application was filed it was apparent or obvious that the switching devices might be so automatically controlled from the motor and generator shafts that the switching of the battery circuit from the motor to the generator circuit could be accomplished automatically, and only mechanical skill was required to provide the means to effectuate automatic control, it is evident that there was no invention of a means for automatically shifting the switches. On the other hand, if the provision of a means to shift the switches demanded inventive genius, and something more than mechanical skill, Heany must have had in mind at the time of filing his original application the structural means or mechanism which would automatically control the switches.

There is nothing in the record to show that Heany, at the time of filing his original application, had conceived any definite means or structural mechanism which would produce the automatic shifting of the switches suggested by the original specification. True enough the specification does state:

"That it is also apparent that the switching devices might be automatically controlled from the motor *and* generator shafts, so that the switching of the

battery circuit from the motor to the generator circuit could be accomplished automatically."

Inasmuch, however, as it was practicable to automatically control the switches from the generator shaft, but not so practicable, if not utterly impracticable, to effectively control them from the motor shaft, which should function only long enough to start the engine, that statement itself amounts almost to a demonstration that, while Heany recognized the feasibility of automatic control, he had worked out no definite conception as to just how such control might be successfully effectuated.

If a skilled mechanic, presented with the problem of automatic control of the switches referred to in Heany's original application, would without the exercise of the inventive faculties recognize the practicability of applying a centrifugal speed governor to the generator shaft to divert the battery current from the motor to the generator circuit, such use of the centrifugal governor was obvious, and its application to the generator shaft was therefore not invention. If it was not obvious that switching control could be secured by means of a speed governor, and that means required invention, then it must be said that Heany's original application discloses no such means and lays no basis for the divisional application. Moreover, Coleman's patent, No. 745,157, which is prior art, provided for a centrifugal governor which apparently accomplished a similar purpose, and it would seem that Heany's application disclosed no new *effective* means of establishing automatic control.

The patentability of the claims of the divisional application, therefore, rests solely upon the proposition that the bare conception of an automatic control of the electrical switches was not obvious and constituted invention. If such a conception was invention, the original disclosure might be supplemented by permitting the addition of an obvious or well-known device to produce the desired result; but, unless the conception of automatic control was inventive, the claims of the divisional application were properly rejected.

It must be admitted that automatic control of the switches relieves the operator of the care of the circuits, and functions with a certainty which reduces to a minimum, not only the danger of the starting motor obtaining a destructive speed when the load is removed, once the engine is started, but also the danger of the undue increase of voltage at the generator brushes, and a consequent increase of voltage through the fields which might seriously damage the machine. Automatic control was therefore most useful, but it certainly was not new to the art, if it was an obvious substitute for manual control. If it was new to the art at the time of the filing of Heany's original application, it is not patentable over the patent issued on that application and the invention described and claimed therein.

The decision appealed from is affirmed.